HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE TULALIP TRIBES OF
WASHINGTON,
                              Plaintiff,

          v.

STATE OF WASHINGTON, et al.

                              Defendants.

CASE NO. C12-688 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on plaintiff the Tulalip Tribes of Washington's motion for summary judgment (Dkt. # 13) and defendants' cross-motion for summary judgment (Dkt. # 20). Plaintiff seeks a declaration that the State is in violation of the Tribal-State Compact, and an injunction requiring the State to execute an amendment with plaintiff incorporating Tulalip's proposed amendment. Defendant argues that Rule 19 requires dismissal, and that even if the case could proceed without joinder of other tribes, the plain language of the compact does not authorize the requested amendment. Having reviewed the memoranda, supporting documents, and the record herein, the court

DENIES plaintiff's motion for summary judgment, and GRANTS defendants' cross-motion for summary judgment.[1]

## II. BACKGROUND

In 2004, the Spokane Tribe began negotiations with the State to enter into a compact to allow the Spokane Tribe to conduct Class III gaming. Dkt. # 21 (Day Decl.) ¶ 8. As part of the negotiations, the Spokane Tribe and State were mindful of several concerns, including, among others, that (1) the Spokane Reservation was remote, with smaller communities spread across a large geographical area; (2) the Spokane Tribe was the only tribe that operated a gaming business without a compact with the state; (3) five gaming businesses and about 1,000 slot machines had been in operation prior to the negotiations, and the basic compact model provided for fewer locations and fewer Tribal Lottery System machines; (4) few, if any Tribal Lottery System machines were available to be leased to the Spokane Tribe or other tribes under the existing Tribal Lottery System. *Id.* ¶ 11. To address the unique situation of the Spokane Tribe, the State and the Spokane Tribe negotiated specific terms, which became known as Appendix Spokane, and the State made clear that all provisions were interdependent, that the State would not agree to any individual provision in the Appendix Spokane without the others, and that without each of the requirements, the entire agreement was not valid. *Id.* ¶ 14. In Appendix Spokane, the State agreed to an Inter-Tribal Fund to provide an alternative mechanism for the Spokane Tribe to obtain Tribal Lottery System machines in case other tribes did not lease to them. *Id.* ¶ 15. There were several requirements negotiated before the Spokane Tribe could use the Inter-Tribal Fund mechanism, including (1) the Spokane Tribe had to first commit to participating with other tribes in additional negotiations to establish a revised statewide framing for tribal gaming, including Tribal Lottery System allocations;

---

[1] This matter may be decided on the papers submitted. Accordingly, the court DENIES the parties' request for oral argument.

1   (2) the Spokane Tribe had to make reasonable efforts to obtain the necessary machines

2   from other tribes; and (3) the Spokane Tribe had to limit their operation to fewer total

3   machines than other tribes.  *Id.*; Dkt. # 15-4 at 7-9 (Ex. 4 to Giampetroni Decl.),

4   Appendix Spokane § 7.  The entire Spokane Compact, including Appendix Spokane, was

5   signed by Governor Gregoire in February 16, 2007.  Dkt. # 21 (Day Decl.) ¶ 16.

6          In 2006, the Governor sought clarification on whether various tribes preferred

7   separate negotiations or a collective, joint negotiation between all tribes for gaming

8   compacts. *Id.* ¶19.  The twenty-seven federally recognized tribes of Washington with

9   gaming compacts, including plaintiff, asked the State to enter into a joint negotiation for a

10  compact appendix that would address issues with the existing Tribal Lottery System

11  machines, including the maximum number of machines available to the tribes, each

12  tribe's base Tribal Lottery System machine allotment, and the procedures for

13  participating tribes to lease additional machines up to an agreed maximum operating

14  ceiling.  *Id.* ¶ 20.[2]  Part of the negotiations included a discussion concerning inter-tribal or

15  pooling approach as a desirable method of leasing machines and fairly distributing

16  revenues to more rural and non-gambling tribes, but this concept did not prevail.  *Id.* ¶ 22.

17  The State finalized the joint tribal negotiations for Appendix X2 ("X2") in February

18  2007, and Governor Gregoire signed it on March 30, 2007.  *Id.* ¶ 23; Dkt. # 15-2 at 2 (Ex.

19  2 to Giampetroni Decl.), X2 Recitals.  However, X2 was not effective until certain

20  conditions were met, including that all of Washington's compacted tribes, except for the

21  Spokane and Cowlitz tribes, had approved and signed identical X2 appendices and notice

22  of the approval had been published in the Federal Register.  Dkt. # 15-2 at 53 (Ex. 2 to

23  Giampetroni Decl.), X2 § 18.  On May 31, 2007, the Bureau of Indian Affairs,

24

25

26       [2] *See also* Dkt. # 15-1 at 7 (X2 § 1) ("This Appendix describes, authorizes and sets forth
     provisions applicable to the operation of a tribal lottery system conducted pursuant to the Indian
27   Gaming Regulatory Act for playing electronic scratch ticket and on-line lottery games.").

1  Department of the Interior, published its approval of X2 for each of the 27 joint

2  negotiating tribes, including plaintiff.[3]  Dkt. # 21 (Day Decl.) ¶ 25.

3       On September 14, 2010, the State received a letter from plaintiff requesting

4  negotiations for a ninth amendment to its compact to include an alternate way to obtain

5  leasing for additional machines through an Inter-Tribal Fund.  *Id.* ¶ 26.  Plaintiff cited the

6  compact's most favored nation clause (section 12.4) and requested a method similar to

7  Appendix Spokane to acquire additional Tribal Lottery System machines.  *Id.* ¶ 28.  The

8  parties held unsuccessful negotiations through February 2012, and this lawsuit followed.

9  *Id.* ¶¶ 26-42.

10                                    **III. ANALYSIS**

11       Summary judgment is appropriate if there is no genuine dispute as to any material

12  fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

13  56(a).  The moving party bears the initial burden of demonstrating the absence of a

14  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

15  Where the moving party will have the burden of proof at trial, it must affirmatively

16  demonstrate that no reasonable trier of fact could find other than for the moving party.

17  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the

18  nonmoving party will bear the burden of proof at trial, the moving party can prevail

19  merely by pointing out to the district court that there is an absence of evidence to support

20  the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

21  the initial burden, the opposing party must set forth specific facts showing that there is a

22  genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*

23  *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most

24

25  _____

26       [3] As part of X2, the tribes agreed that they would not seek to amend the Tribal Lottery
     System Terminals prior to June 30, 2009, except for technical changes or by mutual agreement.
27  Dkt. # 15-2 at 51 (Ex. 2 to Giampetroni Decl.), X2 § 15.1.

1   favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

2   *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

3       "The Indian Gaming Regulatory Act ("IGRA") provides a comprehensive

4   framework for regulating gaming on Indian land." *Idaho v. Shoshone-Bannock Tribes*,

5   465 F.3d 1095, 1096 (9th Cir. 2006) (citing 25 U.S.C. § 2701-2721).  The IGRA divides

6   tribal gaming into three classes, and only Class III gaming is at issue here.  Class III

7   gaming may be conducted on Tribal land if it is (1) authorized by the tribe seeking to

8   conduct the gaming, (2) located in a State which does not bar such gaming, and (3)

9   conducted in conformance with a Tribal-State compact entered into by the tribe and state.

10   *Id.* (citing 25 U.S.C. § 2710(d)(1)).

11       General principles of federal contract law govern tribal compacts entered into

12   pursuant to the IGRA.  *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v.*

13   *Cal.*, 618 F.3d 1066, 1073 (9th Cir. 2010).  This court relies on Washington contract law

14   because this court and the parties discern no difference between Washington and federal

15   contract law.[4]  *Id.*

16       Washington follows the objective manifestation theory of contracts.  *Hearst*

17   *Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 490, 503, 115 P.3d 262 (2005).  In

18   determining the parties' intent, the court focuses on the objective manifestations of the

19   agreement, rather than on the unexpressed subjective intent of the parties.  *Id.*  The court

20   imputes an intention corresponding to the reasonable meaning of the words used.  *Id.*

21   Thus, the subjective intent of the parties is generally irrelevant if the intent can be

22   determined from the actual words used.  *Id.* at 504.  Words in a contract are given their

23   ordinary, usual, and popular meaning unless the entirety of the agreement clearly

24   demonstrates a contrary intent.  *Id.*  The court must also view the contract as a whole and

25

26       [4] The State has not disputed plaintiff's assertion that there is no discernible difference
between Washington and federal law in terms of the relevant general principles of contract

27   interpretation.

the parties' conduct in determining intent.  *King v. Rice*, 146 Wn. App. 662, 670, 191 P.3d 946 (2008).  In a breach of contract action, summary judgment is appropriate if a contract is unambiguous, even if the parties dispute the legal effect of a provision.  *BP Land & Cattle LLC v. Balcom & Moe, Inc.*, 121 Wash. App. 251, 254, 86 P.3d 788 (2004).

Here, the parties dispute the legal effect of the most-favored tribe language in section 12.4.  Plaintiff argues that the parties intended that plaintiff enjoy the benefit of any terms pertaining to Player Terminal allocation agreed to between the State and another tribe that are more favorable than the terms pertaining to Player Terminal allocation contained in the Tulalip Compact.  Dkt. # 13 at 11.  Plaintiff argues that the Attachment Spokane Inter-Tribal Fund contains terms that are more favorable, and that it need not accept unfavorable terms within that same provision, citing *Idaho*, 465 F.3d at 1100-02.  *Id.* at 13-15.

Section 12 of X2 governs the Tribal Lottery System player terminal acquisition and operation.  Section 12.2 provides:

> The Tribe may acquire the ability to operate additional Player Terminals that have been allocated by compact to any other Washington tribe and may also transfer any of its own Allocation of Player Terminals, or the ability to operate such allocated Terminals to another Washington tribe that has entered into a compact authorizing operation of a Tribal Lottery System consistent with this Appendix ("Eligible Tribe), subject to [several] conditions.

Dkt. # 15-2 at 42 ((Ex. 2 to Giampetroni Decl.), X2 § 12.2.  One of those conditions is that plaintiff agrees "that its acquisitions and transfers of the ability to operate additional Player Terminals shall be made only pursuant to a plan approved by no less than a majority of the tribes that were Eligible Tribes at the time such plan was adopted."  *Id.* (§ 12.2.2).  Section 12.4, the section at issue here, provides:

> Except as specifically provided in Section 12.2.1 of this Appendix, in the event the State agrees (or is required by law or a court ruling to agree) to

1    permit an allocation of Player Terminals to a tribe which is greater, or is on
2    terms which are more favorable, than as set forth herein, the Tribe shall be
     entitled to such greater Allocation or more favorable terms.

3    *Id.* (§ 12.4).

4        The court notes that Appendix Spokane became effective before X2 became

5    effective.  There is no indication in X2 that the parties intended it to have retroactive

6    effect.  Rather, X2 only became effective when a series of conditions occurred, including

7    that appendices containing identical terms, conditions and provisions be approved and

8    signed by the authorized officials of the State and by all of the Indian tribes in the State of

9    Washington (except Cowlitz and Spokane tribes).  Dkt. # 15-2 at 53 (X2 § 18.).  Even if

10   X2 applied to compacts entered into (and effective) before the effective date of X2,

11   plaintiff's reliance on *Idaho* is misplaced.  In *Idaho*, the Ninth Circuit analyzed the plain

12   language of the compact at issue in accordance with Idaho contract law.  465 F.3d at

13   1098-1101.  The court found that the plain language of the compact authorized the tribes

14   to operate video gaming machines because Idaho allowed three other tribes to operate

15   tribal video gaming machines in the state.  *Id.* at 1098.  The Ninth Circuit also relied on a

16   provision concerning amending the compact in concluding that "the plain language

17   leaves no room for negotiation; it mandates an amendment to permit one thing-the

18   operation of the same games conducted by other tribes under their compacts."[5]  *Id.* at

19   1099.  Idaho argued that section 24.d's language referring to the games permitted by

20   other tribes' compacts required that the amendment mandated by section 24.d include the

21   limitations in Idaho Code § 67-429C because the other Idaho tribes had amended their

22   gaming compacts to include those limitations on numbers of gaming machines.  *Id.* at

23   1100.  The Ninth Circuit rejected this argument, relying on the statutory scheme and the

24   compact's plain language.  *Id.* at 1100-01.  The Ninth Circuit reasoned that the other

25

26       [5] Section 24.d provided that "when any other is permitted by compact to conduct class III
     games not permitted by the Tribes' Compact, the Compact '*shall be amended* to permit the
27   Tribes to conduct those same additional games....'" *Id.* (emphasis in original).

1   tribes agreed to accept the statutory package of amendments in return for benefits offered

2   by those amendments that were not included in their existing compacts. *Id.* 1101. The

3   court noted that Shoshone-Bannock Tribes did not agree to amend their compact and

4   chose instead to rely on their compact's existing provisions to confer the necessary

5   permission to operate the video gaming machines. *Id.* The court thus concluded that the

6   tribe may not be subject to the number limitations of the state statutory package that

7   would have applied had they agreed to amend under the Idaho statute. *Id.*

8         The *Idaho* court relied on the plain meaning of the compact and statutory scheme

9   for its holding. In contrast, plaintiff agreed to its compact after a joint negotiation with

10  twenty-seven other tribes, and now seeks to amend the compact to add an alternate

11  procedure.[6] However, in so doing, plaintiff apparently asks the court to allow it to pick

12  and choose which portions of the Inter-Tribal Fund provision are most favorable to it

13  while rejecting the less favorable limitations within the same provision. *Idaho* does not

14  support such an outcome, and neither does the plain language of the compact or

15  Washington contract law.

16        The plain language of the compact provides that if the State agrees, or is required

17  by law or court ruling to agree, to permit an allocation of Player Terminals to a tribe on

18  terms that are more favorable, plaintiff shall be entitled to such more favorable terms.

19  There has not been a court order or law requiring the terms plaintiff seeks. However, the

20  State has agreed to Appendix Spokane, but only to all of Appendix Spokane. This fact is

21  most clearly expressed in the preamble to Appendix Spokane:

22

23            Agreement by the State to each of the individual numerical limitations and
              other provisions contained in this Appendix is expressly conditioned upon
              agreement by the Tribe to each and every other provision contained in the

24           Appendix. Absent such agreement by the Tribe, the State would not, and

25

26

27         [6] Nothing in this court's order prohibits the parties from amending the compact pursuant
   to section 15.2.3 of X2.

does not, agree to the individual numerical limitations and other conditions contained in this Appendix.

Dkt. # 15-4 at 2 (Ex. 4 to Giampetroni Decl.), Appendix Spokane, Preamble. The State has never agreed to the select portions that plaintiff wishes to cherry-pick out of the Inter-Tribal Fund provision without the corresponding limitations. *See id.* at 7-9, Appendix Spokane § 7. Giving the terms of the contract the ordinary, usual and popular meaning, and reading the contract as a whole, the court finds that there is only one reasonable interpretation: the State must have agreed to the same more favorable allocation terms permitted to other tribes. Since the State has never agreed to the allocation terms plaintiff seeks to force onto the State by declaratory and injunctive relief, plaintiff is not entitled to an order forcing those terms on the State.[7]

## IV. CONCLUSION

For all the foregoing reasons, the court DENIES plaintiff's motion for summary judgment and GRANTS defendants' cross-motion for summary judgment. The court also DENIES motions for leave to file amicus curiae briefs (Dkt. ## 24, 26) because the court need not resolve the additional issues raised in those briefs, and DENIES plaintiff's motion for leave to file a response to new argument raised in the State's briefing (Dkt. # 31) because the court has disregarded the new argument. The Clerk is directed to enter judgment in favor of defendants and against plaintiff.

Dated this 22nd day of May, 2013.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Judge

---

[7] Since interpretation of the unambiguous language in the compact is dispositive of the parties' motion and cross-motion for summary judgment, the court need not address the remaining arguments.